830 So.2d 552 (2002)
STATE of Louisiana, Appellee
v.
Santez LONG, Appellant.
No. 36,167-KA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 2002.
*553 Peggy J. Sullivan, Monroe, for Appellant.
Richard P. Ieyoub, Attorney General, Jerry L. Jones, District Attorney, George D. Ross, Assistant District Attorney, for Appellee.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
WILLIAMS, J.
The defendant, Santez Long, was charged by bill of information with one count of armed robbery, a violation of LSA-R.S. 14:64. After a jury trial, the defendant was convicted as charged. He was sentenced to serve eight years at hard labor without the benefit of probation, parole or suspension of sentence. The defendant now appeals. He challenges the sufficiency of the evidence presented at trial and the excessiveness of the sentence imposed. For the following reasons, we affirm.

FACTS
On April 28, 1999, at approximately 12:00 p.m., two men armed with guns walked into Moody's Lounge in Monroe, Louisiana. The men had "dollar-bill" bandanas covering their faces. They ordered everyone in the lounge to lay down on the *554 floor and they took a grey metal box containing approximately $175. Cherelyn Ross ("Ross"), who was the employee on duty at the time of the robbery, had taken a break to go to the restroom. When she did not hear the regular crowd noise from inside the restroom, she looked out of the restroom door. Ross saw everyone on the floor, and witnessed two men running out of the front door. She stated that she had seen the men in the lounge a short time before the robbery. Ross did not see their faces. After the men left, Ross called 911 and reported that two black males with dollar-bill bandanas had robbed the patrons of the lounge at gunpoint and taken a metal box containing money. Law enforcement officers arrived at the scene and recovered a bandana with a dollar-bill design from behind the building.
Sergeant Connie Miller of the Ouachita Parish Sheriff's Office was dispatched to the scene of the armed robbery. She was given a description of a red Jeep Eagle used by the suspects to leave the scene. At some time later that day, Sergeant Miller spotted and stopped a red Jeep Eagle occupied by three individuals, two of whom fit the description of the suspects. Lieutenant Jay Via of the Ouachita Parish Sheriff's Office secured the crime scene and then met Sergeant Miller at the location of the stopped vehicle. The two occupants of the vehicle who fit Ross' general description of the suspects, Elton Bonner ("Bonner") and John Armstrong ("Armstrong"), were arrested for armed robbery. The third occupant was released. Bonner and Armstrong were transported to the lounge. Ross identified them as the two men who had been in the lounge earlier that day and who were possibly involved with the robbery.[1] Bonner and Armstrong were then transported to the police station.
At the police station, Armstrong signed a waiver of his Miranda rights and gave a recorded statement. Armstrong denied his involvement in the robbery as a gunman. He stated that on the day of the robbery, he and Bonner picked up the defendant and an accomplice identified as "Keon" at the Oak Manor Apartments. The defendant told Armstrong to drop the defendant and Keon at Moody's Lounge, drive around the block and return to pick them up. The defendant promised Armstrong a sum of money if he complied with defendant's request. Bonner also gave a similar statement, implicating the defendant in the crime.
Shortly after Armstrong and Bonner made their statements, Lieutenant Via received a telephone call from a woman, who identified herself as Rachel Sims ("Sims"). Sims informed Lieutenant Via that Armstrong and Bonner were not the gunmen in the robbery. She stated that the defendant and Keon were the actual gunmen, and that she would assist the police in locating them. Lieutenant Via and Sergeant Danny Peeler met Sims at the Wossman High School. Sims informed the officers that the defendant and Keon were residing at the Oak Manor Apartments with a female named Sharon Jones ("Jones"). Sims agreed to lure the defendant to a nearby gas station so that he could be apprehended.
Sims brought the defendant to the gas station, exited the vehicle and went into the gas station. She signaled to the officers and identified the defendant. The defendant was arrested and immediately advised of his Miranda rights. The defendant *555 acknowledged his willingness to cooperate with the officers and told them where Keon lived. Sims led the officers to Jones' apartment. Jones gave her consent to search the apartment, and the officers located Keon. Additionally the officers recovered two firearms from the apartmenta Ruger .22 semi-automatic pistol and a Raven Arms .25 semi-automatic pistol.
At approximately 8:40 p.m., the defendant was interviewed at the sheriff's office by Lieutenant Via in the presence of Sergeant Danny Peeler. The defendant read his Miranda rights aloud and signed a waiver of rights form. His signature was witnessed by both Lieutenant Via and Sergeant Peeler. The defendant then indicated that he would give a recorded statement.
During his statement, the defendant related that he and Keon were in a red vehicle with Bonner and Armstrong before the crime. The defendant confessed that he armed himself with a Ruger .22 semi-automatic and entered Moody's lounge with Keon and committed an armed robbery. According to the defendant, he held his gun at his side during the armed robbery and told everyone to get down. The defendant then grabbed a gray metal box, and he and Keon left the building.
During the statement, the defendant identified the Ruger .22 semi-automatic pistol recovered by the police as the weapon he used during the commission of the armed robbery. He also identified the Raven Arms .25 semi-automatic pistol recovered by the police as the weapon Keon used during the robbery. The defendant identified the bandana with a dollar-bill design as the one he had worn during the robbery. He further identified sixty-four dollars as the money taken from his person after his arrest. The money recovered from the defendant's person, when added to the money recovered from Keon's person, totaled one dollar less than the total amount of money taken during the robbery.
During Keon's interview, he revealed that his name was actually Antonio Fernando Walker and that he was wanted for numerous armed robberies in the state of Alabama. He gave a statement with regard to the robbery at Moody's Lounge that was consistent with the statement made by the defendant.
Subsequently, the defendant was charged by bill of information with armed robbery. After a trial by jury, the defendant was convicted as charged. During sentencing, the trial court noted the receipt of the pre-sentence investigation report ("PSI"), input from the defendant's family and friends, and the factors set forth in LSA-C.Cr.P. art. 894.1. Specifically, the trial court noted that the defendant was a first felony offender with only one prior minor juvenile offense. It observed that the defendant was a high school dropout, who was not gainfully employed at the time of the offense. The trial court further noted that the defendant has maintained his innocence despite the jury's guilty verdict.[2] After stating its opinion that armed robbery is an extremely dangerous crime because of the real and direct danger of injury and/or death during its commission, the trial court sentenced the defendant to serve eight years imprisonment at hard labor without the benefit of probation, parole or suspension of sentence, with credit for time served. The defendant now appeals.

DISCUSSION
The defendant contends the evidence was insufficient to support the jury's verdict. *556 He argues that the state did not prove that there was a taking of property from the person of or that was in the control of Ross, the victim and eyewitness. The defendant also argues that the state failed to prove that the property was removed from the control of Ross by the use of force or intimidation. He argues that Ross was in the restroom when the money was removed and was unaware of what had happened until after the taking. The defendant also notes that Ross did not see a gun.
The state notes that Ross testified she was an employee of the lounge, she was working at the time of the robbery and she was responsible for the money taken. It contends that although Ross was in the restroom immediately before the defendant entered the lounge, she was still in control of the money taken by the defendant. The state also asserts that the defendant's action in arming himself and entering the lounge proved that he intended to use force and/or intimidation against anyone who was in control of the money in the lounge. The state further asserts that Ross was aware that a robbery was in progress because she saw all the customers lying on the floor and saw the suspects wearing bandanas on their faces. Ross was obviously intimidated because she remained in the bathroom, watching, until the suspects ran out of the lounge. Furthermore, the state argues that the defendant's own confession, which was introduced into evidence, was sufficient to prove that he committed the armed robbery. It notes that the contents of and circumstances surrounding the defendant's confession were corroborated by Lieutenant Via's testimony of the results of his investigation.
Although the record does not reflect that defendant filed a motion for post-verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821, we will consider a sufficiency of the evidence argument in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
The standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the *557 testimony of a witness in whole or in part. State v. Bosley, supra.
"Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." LSA-R.S. 14:64.
If property is taken from the victim's presence by intimidation with a weapon, it is sufficient to sustain a conviction for armed robbery. State v. Refuge, 300 So.2d 489 (La.1974); State v. Toney, 26,711 (La.App.2d Cir.3/1/95), 651 So.2d 387. To establish robbery, the property must be sufficiently under the victim's control that, absent violence or intimidation, the victim could have prevented the taking. State v. Thomas, 447 So.2d 1053 (La.1984); State v. Toney, supra; State v. Doan, 519 So.2d 174 (La.App. 4th Cir.1987), writ denied, 532 So.2d 145 (La.1988).
Property is considered taken from the presence of the victim even if the victim is in one room, while valuables located in another room are removed. State v. Loyd, 35,637 (La.App.2d Cir.2/27/02), 810 So.2d 1214, citing State v. Verret, 174 La. 1059, 142 So. 688 (1932). See also State v. Baldwin, 388 So.2d 664 (La.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981). In State v. Jacobs, 493 So.2d 766 (La.App. 2d Cir.1986), evidence that one of the robbers took the victim's wallet from his pants on a chair in an adjoining room, while the victim was awakened in his bedroom, struck on the head and stumbled onto the floor of the bedroom, was found sufficient to support an armed robbery conviction. State v. Loyd, supra.
The fact that the victim did not see a dangerous weapon does not preclude an armed robbery conviction. When defendant creates an atmosphere of intimidation, prompting the victim to reasonably react with fear for his life, an armed robbery conviction is justified. State v. Cotton, 94-384 (La.App. 5th Cir.11/16/94), 646 So.2d 1144; State v. Rattler, 503 So.2d 168 (La.App. 4th Cir.1987), writ denied, 507 So.2d 224 (La.1987); see also State v. Harrison, 501 So.2d 1041 (La.App. 2d Cir. 1987), writs denied, 508 So.2d 65 (La.1987) and 515 So.2d 444 (La.1987).
After a thorough review of the record, we conclude that viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of armed robbery proven beyond a reasonable doubt. At trial, the state presented direct evidence to show that the defendant took money (anything of value) belonging to another (owner of Moody's Lounge) from the person of another (Ross) or that is in the immediate control of another (Ross), by the use of force or intimidation (by entering the lounge wearing a bandana over his face, holding a gun in his hand and ordering everyone to get down), while he was armed with a dangerous weapon (a Ruger .22 semi-automatic pistol). LSA-R.S. 14:64. This direct evidence was in the form of witness testimony, physical evidence and the defendant's own confession.
The defendant's argument that the state failed to prove that the money was in the immediate control of the victim is without merit. Ross' testimony proved that she was an employee of the lounge, was working at the time of the armed robbery and was responsible for the money that was taken. As stated above, the money is considered to have been taken from Ross' presence even if she was in the restroom when the money, which was located in another room, was removed. See State v. Verret, supra; State v. Loyd supra. See *558 also State v. Baldwin, supra, and State v. Jacobs, supra.
The defendant's argument that the state failed to prove that the money was taken by use of force or intimidation is also without merit. The evidence shows that the defendant created an atmosphere of intimidation by masking himself and ordering the occupants of the lounge to get down on the floor, thereby prompting the victim to reasonably react with fear for her life and to remain in the restroom for safety. Based on the evidence presented, any rational trier of fact could have concluded that the defendant was guilty of armed robbery beyond a reasonable doubt. See State v. Cotton, supra; State v. Rattler, supra; see also State v. Harrison, supra. This assignment of error is without merit.
The defendant also contends the sentence imposed is excessive, harsh and constitutes the imposition of cruel and unusual punishment. He argues that the sentence is unconstitutional because neither the facts of the offense nor his personal history justifies the imposition of an eight-year at hard labor sentence. The defendant asserts that the crime was not heinous and the pecuniary loss was relatively small. The defendant also asserts that his only prior conviction was for a minor juvenile infraction. He argues that the minimum sentence of five years at hard labor is the maximum constitutional sentence that could have been imposed in this case.
The state argues that the defendant's eight-year hard labor sentence was less than one-tenth of the maximum sentence to which he was exposed. It contends the sentence was extremely lenient by comparison to other armed robbery sentences, considering the fact that the defendant threatened a business filled with patrons with a gun and caused them to fear for their lives. The state concludes that the sentence is not grossly out of proportion to the severity of the offense nor does it shock the sense of justice.
When a defendant fails to file a LSA-C.Cr.P. art. 881.1 motion to reconsider sentence, the appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992). At the time of the offense, LSA-R.S. 14:64B provided:
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
The defendant's eight-year hard labor sentence is not grossly disproportionate to the crime of armed robbery, nor does it shock the sense of justice. As noted by the trial court during sentencing, the crime of armed robbery is one of the single most dangerous criminal situations because of the potential for severe injury or loss of human life. The defendant was clearly not the least culpable participant in the instant crime because he both wielded a gun and took the money. The potential for severe injury and loss of life was great because there were a number of patrons in the lounge during the time the armed robbery was committed. The defendant's sentence of eight years at hard labor is only three years greater than the statutorily mandated minimum sentence, and less than one-tenth of the maximum possible sentence. Although the defendant had a relatively clean criminal record prior to this *559 crime, his sentence does not shock the sense of justice. Thus, the sentence imposed is not constitutionally excessive. This assignment is without merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] According to statements and reports in the record, Armstrong and Bonner had come into the lounge prior to the robbery. They had talked with Ross, ordered a meal and played video poker.
[2] The defendant's pre-sentence investigation ("PSI") report reflects that he stated he "took the rap" for others, who were repeat offenders.