713 So.2d 828 (1998)
STATE of Louisiana
v.
David ROBINSON.
No. 97-KA-269.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
*829 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant Dist. Atty., Thomas J. Butler, Gretna, for Plaintiff-Appellee.
Ed Greenlee, Louisiana Appellate Project, Baton Rouge, for Defendant-Appellant.
Before DUFRESNE, CANNELLA and DALEY, JJ.
DUFRESNE, Judge.
The defendant, David Robinson, was charged by bill of information with simple robbery, in violation of LSA-R.S. 14:65. Defendant proceeded to trial before a six-member jury and was unanimously found guilty as charged.
Defendant was subsequently adjudicated to be a third felony offender and sentenced to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. It is from this conviction and sentence that defendant now appeals. For the reasons set forth herein, we affirm defendant's conviction but vacate his multiple offender sentence and remand the matter for re-sentencing.

FACTS
On the night of July 3, 1994, Willie Causey was on duty as manager at Rally's Restaurant at 4001 Airline Highway. At about 9:40, he was working as cashier at the drive-up window in place of an employee who was taking a break. Defendant ordered a small order of french fries over a remote speaker, then drove up to the window in a white Dodge Spirit automobile. Shawanda Wilson was riding in the front passenger seat.
Causey testified that defendant paid him with a fifty dollar bill. When Causey attempted to give him the appropriate change, defendant insisted he had paid with a one hundred dollar bill, and demanded that Causey give him five twenty dollar bills. At that point employee Walter Dixon noticed the disturbance and approached Causey's station to investigate. Causey told defendant that the amount he demanded was not the proper change for a fifty dollar bill. Defendant then said, "You're tweaking," which is street slang for "you're wrong."
Causey took the fifty dollar bill out of the cash drawer and showed it to defendant, telling him that it was this bill he had given Causey. Causey also had in his hand the forty-nine dollars he had attempted to give defendant as change. Defendant snatched all of the money from Causey's hand, and handed it to Wilson. Causey told defendant he had taken more money than was owed him, and asked him to pull his car over and wait while he counted the money in his cash drawer. Defendant smiled and drove away from the scene.
Causey called police and reported a robbery. He then called Jody Stevens, a part-owner and operator of the restaurant, to tell her what had happened. Stevens instructed Causey to count the cash in his drawer. Causey did so, and found the total did not balance.
A customer at the restaurant gave Dixon a napkin on which he had written the license number of the white Dodge. Dixon gave the napkin to Causey.
Deputy David Darwin of the Jefferson Parish Sheriff's Office reported to the scene and interviewed Causey. Causey gave Darwin the license number and gave the officer descriptions of defendant and the car. Detective George Giron conducted the follow-up investigation in the case. He determined that the white Dodge Spirit was registered to Enterprise Rent-A-Car in Metairie. Company *830 records showed that on the night of the robbery, the car was on rental to a Theresa Monroe. Detective Giron interviewed Ms. Monroe, who gave him the names of people whom she had allowed to use the car. Based on that information, Giron compiled a photographic lineup which included a picture of defendant.
On July 25, 1994, Giron showed Willie Causey the lineup, and Causey identified defendant as the man who had robbed him. Giron then obtained a warrant for defendant's arrest. Defendant was not arrested until several months later. On April 3, 1995, Giron learned that Walter Dixon had witnessed the incident at Rally's. He showed Dixon the photographic lineup, and Dixon identified defendant.
Shawanda Wilson testified for the defense. She stated that defendant drove her to Rally's so she could get change for a one hundred dollar bill she had received when she cashed her daughter's Social Security check. Because she only wanted to get change, she ordered the least expensive item on the menu, a small order of fries. Defendant gave the one hundred dollar bill to the cashier, received the correct change, and left the window. Ms. Wilson testified that there was no dispute over money.
Willie Causey testified that after defendant's arrest, he received numerous telephone calls and visits from defendant and his girlfriend, Amanda Martin. The two repeatedly pressed him to drop the criminal charges against defendant. At one point, Causey executed an affidavit expressing his intention of dropping the robbery charge. Causey later retracted this statement, and testified that he had given it because he felt pressured to do so.

SUFFICIENCY OF THE EVIDENCE
On appeal, defendant complains about the sufficiency of the evidence used to convict him of simple robbery. He specifically contends that the state failed to show that he used force or intimidation, an essential element of simple robbery, and that at most, the state proved a misdemeanor theft.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Issac, 97-497 (La.App. 5 Cir. 10/28/97), 702 So.2d 320. The elements necessary to sustain a conviction of simple robbery are: 1) the taking of anything of value; 2) belonging to another; 3) from the person of another; 4) by use of force or intimidation. LSA-R.S. 14:65; State v. Russell, 607 So.2d 689 (La. App. 4 Cir.1992), writ denied, 94-0318 (La.6/21/96), 675 So.2d 1069.
Applying the Jackson standard previously set forth, we find that the state proved the essential elements of the offense, including the use of force or intimidation, beyond a reasonable doubt. In the present case, while the evidence does not show that defendant used any threatening words or gestures, Causey was, by his own account, intimidated by defendant. Defendant's demeanor caused him concern, and defendant used slang or "street" words that are not used in Causey's neighborhood. He was particularly intimidated by defendant's use of the term "tweaking," because he knows it to be a "street" word. Causey testified that defendant's behavior was like that of "someone that isn't playing." Causey further stated that he believed defendant was not a man to fool around with. In addition, Willie Causey testified he was afraid of defendant before the taking occurred, despite the fact that defendant did not use physical force against him. Eyewitness Walter Dixon testified that defendant looked frightening. Dixon further stated that Causey was scared of defendant, although he could not give a specific reason why. Causey's supervisor, Jody Stevens, testified that he was frightened about the robbery when he called her that night.
Based on this evidence as well as the facts previously set forth, we find that the state proved beyond a reasonable doubt the taking of anything of value belonging to another *831 from the person of another by use of intimidation. See State v. McCall, 577 So.2d 764 (La.App. 2 Cir.1991), writ denied, 582 So.2d 1304 (La.1991). Accordingly, we conclude that the evidence was sufficient to sustain defendant's conviction of simple robbery.

JURY INSTRUCTIONS
On appeal, defendant also complains that the trial court erred in refusing his requested jury charge, which included a definition of simple robbery, with a specific description of the element of force or intimidation. He also contends that the trial court improperly instructed the jury as to the elements of simple robbery.
LSA-C.Cr.P. art. 807 provides, in part, as follows:
A requested special charge shall be given by the court if it does not require special qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
When considering an allegedly improper jury instruction, a reviewing court must determine whether it is "reasonably likely" that the jury applied the challenged instruction in an unconstitutional manner, not whether it is possible that the jury misapplied the instruction. Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445. In determining whether it is reasonably likely that the jurors misapplied the instruction, the challenged terms are considered in relation to the instructions as a whole. State v. Lassere, supra. The test is whether, taking the instruction as a whole, reasonable persons of ordinary intelligence would understand the charge. State v. West, 568 So.2d 1019 (La. 1990).
We have reviewed the jury instructions and find that the trial judge sufficiently instructed the jury on the elements of the offense of simple robbery. In fact, the judge tracked the language of the statute in defining the offense. Regarding defendant's requested charge, we find that it was sufficiently included in the court's general charge. Moreover, defendant did not show that his requested charge was a proper statement of the law. Accordingly, we find the arguments raised by defendant regarding the jury instructions to be without merit.

EXCESSIVE SENTENCE
Defendant also complains that the life sentence imposed was constitutionally excessive, and that his trial counsel was ineffective in failing to preserve his right to appeal the sentence. We find it unnecessary to address these issues at this time because the sentence imposed by the trial judge is illegal and must be vacated for the reasons set forth in the following errors patent discussion.

ERRORS PATENT DISCUSSION
We have reviewed this case for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Such a review reveals that the trial judge imposed an illegal sentence on defendant. The trial court sentenced defendant as a third felony offender under the current version of LSA-R.S. 15:529.1A(1)(b)(ii), which reads as follows:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Under the current version of the statute, defendant would be eligible for a life sentence, as his underlying offense, simple robbery, is among the crimes of violence listed in R.S. 14:2(13). However, the most recent version of R.S. 15:529.1A did not become effective until August 15, 1995, after defendant committed the underlying offense. 1995 La. Acts No. 1245, § 1. The trial court's application of the most recent version of the statute constitutes a violation of ex post facto laws.
*832 Ex Post Facto application of criminal laws by the state is prohibited by Article I, § 10 of the United States Constitution and Article I, § 23 of the Louisiana Constitution. This prohibition has traditionally extended only to penal statutes which disadvantage the offender affected by them. In Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), the United States Supreme Court determined that the constitutional prohibition against ex post facto laws is triggered by a statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to the law at the time when the act was committed.
In State v. Rolen, 95-0347 (La.9/15/95), 662 So.2d 446, 448, the Louisiana Supreme Court discussed the features of an ex post facto law:
For a criminal or penal law to fall within this prohibition, it "must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). "Critical to relief under the Ex Post Facto Clause," Weaver observes, "is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Id. (Emphasis supplied). The Ex Post Facto Clause therefore assures "that persons have fair notice of potential criminal punishment and will be able to rely for their conduct on the criminal law as it exists at the time of their acts." Prater v. United States Parole Comm'n, 764 F.2d 1230, 1239 (7 th Cir.1985).
On July 3, 1994, the date of the robbery, LSA-R.S. 15:529.1A(2) provided:
If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
(a) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or
(b) If the third felony and each of the two prior felonies involved a violation of R.S. 14:34, R.S. 14:62.1, R.S. 14:62.2, R.S. 14:62.3, R.S. 14:14:65, R.S. 14:110(B), or of any crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Under the earlier version of the statute, defendant was not eligible for a mandatory life sentence, as neither his underlying nor his predicate convictions were of the type included under subparagraph (b). Defendant's maximum sentence exposure under the laws in effect in July, 1994, was fourteen years. By applying the current provisions of the multiple offender statute, the trial court deprived defendant of fair notice, and exposed him to punishment beyond what was prescribed when the crime was committed.
For the reasons set forth herein, we affirm defendant's conviction of simple robbery, but vacate his multiple offender sentence and remand the case for re-sentencing under the version of the statute in effect at the time the underlying offense was committed.
CONVICTION AFFIRMED, SENTENCE VACATED, REMANDED FOR RE-SENTENCING.