767 So.2d 808 (2000)
STATE of Louisiana
v.
James JONES.
No. 00-KA-190.
Court of Appeal of Louisiana, Fifth Circuit.
July 25, 2000.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Allison Wallis, David Wolff, Assistant District Attorneys, Gretna, LA, Attorneys for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, Attorney for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD, and MADELINE JASMINE, Pro Tempore.
GOTHARD, Judge.
The defendant, James Jones, was charged by a two count bill of information with one count of theft over five hundred dollars in currency, a violation of La. R.S. 14:67 and one count of simple robbery, a violation of La. R.S. 14:65. After a trial by the district court judge, the defendant was found guilty as charged on both counts and sentenced to two terms of five years at hard labor, to be served consecutively. Pursuant to a multiple bill, the defendant was found to be a third felony offender. The trial court vacated the original five year sentence imposed for the simple robbery, and resentenced defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. On appeal, defendant alleges that insufficient evidence exists to sustain the conviction for simple robbery.

FACTS
The two counts with which defendant was charged arose out of two separate incidents; however, they were tried together.
*809 Shannon Morneault, a cashier at a Toys R Us store on Veterans Memorial Boulevard in Metairie, testified that she was on duty on the morning of August 17, 1998. At about 11:00, a man approached her to purchase a pack of chewing gum. She totaled the item on her cash register, and the man paid for it. When Ms. Morneault opened her cash drawer, the man said, "Give me the money." She stepped back, fearing the man might have a weapon. The man reached over the counter and took all the currency from the drawer. He exited through the front door of the store.
Ms. Morneault immediately notified her manager, Bill McGee, who was working in his office at the front of the store. Mr. McGee exited the store and chased the man on foot. In the meantime, store employees called police. Mr. McGee yelled at the man to stop. The man turned to look at him while continuing to run. Mr. McGee got into his truck and followed the man to the parking lot of the Barnes and Noble book store adjacent to Toys R Us. He saw the driver of a car pick up the perpetrator in the book store's parking lot. Mr. McGee took note of the car's color and license plate number. He then gave up his pursuit and returned to the store.
Deputy Charlie Love responded to the robbery call. He went to Toys R Us and interviewed Ms. Morneault and Mr. McGee. Mr. McGee gave the officer the license plate number and description of the car in which the man had fled. Both witnesses gave descriptions of the perpetrator. Ms. Morneault testified that the man took between $240.00 and $280.00 from her cash drawer.
Robbery Detective Daniel O'Neil was assigned to do a follow-up investigation of the robbery. On August 27, 1998, he showed Ms. Morneault and Mr. McGee a photographic lineup at the Toys R Us store. The two witnesses viewed the lineup separately, and they both positively identified defendant, James Jones, as the perpetrator of the robbery. Ms. Morneault and Mr. McGee both identified defendant in court as the man who committed the robbery.
On the morning of August 19, 1998, Denise Thomas was working as a cashier at an E-Z Serve convenience store on Lapalco Boulevard. Her manager gave her $4,000.00 in cash and sent her to make a bank deposit for the store. Ms. Thomas got into her car, which was parked on the side of the building. Before she could close the door, a masked man approached her and took the money. He then fled the scene. The police were notified, and a Deputy Vasquez reported to the scene. After performing the initial investigation, Deputy Vasquez turned the case over to Detective O'Neil.
Detective O'Neil took two recorded statements from Ms. Thomas on August 21, 1998. Ms. Thomas told the officer that defendant was the perpetrator. In the first statement, she denied having had any advance notice that defendant would take the store's money. However, in the second statement, she explained that defendant was her baby's father. She admitted that, prior to the incident, defendant asked her how much money the store took in, and how the bank deposits were made. She and defendant discussed, in advance, his plan to rob the E-Z Serve. She further stated that defendant met her on the night of the incident and gave her $800.00. (At trial, she testified that defendant gave her $2,000.00.) She used that money to pay her car note. When O'Neil asked her where she thought the money had come from, she responded, "From the E Z Serve."
Detective O'Neil testified that the car involved in the Toys R Us robbery was registered to a Carolyn Bostick. He eventually interviewed Ms. Bostick's son, Bernard Bostick, who admitted to having transported a man named "Weasie" to both Toys R Us and E-Z Serve. "Weasie" is defendant's nickname. At trial, Bostick testified that he drove defendant to Toys R Us on August 17, 1998 and to E-Z Serve *810 on August 19, 1998. Bostick further testified that he knew what defendant intended to do on those two occasions.
Detective O'Neil interviewed defendant at 2:00 p.m. on August 21, 1998. The tape recording and the written transcript of that interview were admitted as evidence at trial. Defendant admitted to the officer that he and his girlfriend, Denise Thomas, had planned the theft of money from the E-Z Serve. He knew when the store's bank deposit would be made and laid in wait. He expected that he would be taking the money from another employee, and not Thomas. After he took the money from Thomas, he escaped in a car driven by "BJ." He gave Thomas $2,000.00 on the day of the incident. The recorded statement does not include any reference to the Toys R Us incident.

ANALYSIS
On appeal, defendant alleges that insufficient evidence exists to sustain the conviction for simple robbery occurring at Toys R Us, because there was insufficient evidence of force or intimidation.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604.
The elements necessary to sustain a conviction of simple robbery are: 1) the taking of anything of value; 2) belonging to another; 3) from the person of another; 4) by use of force or intimidation. LSA-R.S. 14:65; State v. Robinson, 97-269 (La.App. 5 Cir. 5/27/98), 713 So.2d 828, writ denied, 98-1770 (La.11/6/98), 727 So.2d 444.
In State v. Mason, 403 So.2d 701 (La. 1981), the Louisiana Supreme Court offered an indirect interpretation of the element of "force or intimidation" in the simple robbery statute by comparing the offense with that of theft:
By providing a more severe grade of theft for those instances in which a thief uses force or intimidation to accomplish his goals, the legislature apparently sought to emphasize the increased risk of danger to human life posed when a theft is carried out in face of the victim's opposition.
Id. at 704.
See also, State v. Johnson, 411 So.2d 439 (La.1982); State v. Florant, 602 So.2d 338 (La.App. 4 Cir.), writ denied, 605 So.2d 1147 (La.1992). Resistance by the victim and the use of physical force by the perpetrator are not necessary to complete a simple robbery. In State v. Robinson, this court upheld the defendant's simple robbery conviction under facts similar to those herein. In that case the defendant took money from a cashier at the drive-up window of a fast food restaurant. The evidence did not show that the defendant used threatening words or gestures, or that he used physical force against the victim. The victim testified, however, that the defendant's demeanor caused him concern, and that he was intimidated by the street slang the defendant used. The victim stated that the defendant's behavior was like that of "someone who isn't playing." Robinson, supra, at page 830. In the instant case, cashier Shannon Morneault testified that she rang up defendant's purchase of a pack of chewing gum. He paid for the gum, and she opened her cash drawer. At that point defendant said, "Give me the money." At first Ms. Morneault "didn't really know he was serious." However, when she looked up at him, she immediately knew he was not joking. Defendant reached over the counter and put his hand into the cash register drawer. Ms. Morneault testified that she took a step back and did not interfere with defendant, because she did not want to *811 anger him. She was very much intimidated by defendant and was afraid he would injure her. She was concerned that defendant might have a weapon. She did not call for help until after defendant had fled, as she was afraid defendant would grab her.
Defendant argues that this case is distinguishable from Robinson, because in this case there is no evidence that the defendant used threatening language. We disagree. In Robinson, while the language used may have been "street slang", it did not threaten the victim.
We find that the state proved beyond a reasonable doubt the taking of anything of value from the person of another by use of intimidation, and therefore the evidence was sufficient to sustain defendant's conviction of simple robbery.
We have reviewed the record, including the habitual offender proceedings, for errors patent, in accordance with La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and we note the following error.
Although the transcript shows that the trial judge properly sentenced defendant without benefit of parole, probation or suspension of sentence as provided by La. R.S. 15:529.1A(1)(b)(ii), the habitual offender commitment does not reflect that stipulation. We therefore order the trial court to amend the habitual offender commitment to conform with the sentence as reflected in the transcript.

CONCLUSION
For the above discussed reasons, the defendant's conviction and sentence are affirmed. The trial court is ordered to amend the commitment to conform with the sentence as reflected in the sentencing transcript.
AFFIRMED WITH ORDER.