*166
 
 JOAN BERNARD ARMSTRONG, Chief Judge.
 

 | iCo-defendants-appellants, Quae Tran, Jesse Quach, and Vu V. Ngo, appeal convictions for attempted simple robbery.
 

 On January 29, 2007, the State filed a bill of information charging the defendants-appellants, Quae Tran, Jesse Quach, and Vu V. Ngo, along with two co-defendants, David Nguyen and Thanh Nguyen, with one count of first degree robbery. On February 27, 2007, a preliminary hearing was held in Magistrate court for the defendants Quach, Tran, and Ngo, and the commissioner found no probable cause.
 

 The appellants pled not guilty at arraignment. The trial court heard testimony on defense motions on April 26, 2007, and May 3, 2007. The court denied all defendants’ motion to suppress the evidence and found no probable cause as to appellants.
 

 On November 6, 2007, appellants elected trial by judge. The trial court found the appellants guilty of attempted simple robbery. Appellants filed motions for post verdict judgment of acquittal. On February 1, 2008, the trial court denied the defendant Jesse Quach’s motion for post verdict judgment of acquittal, and after the defendant waived all delays, the trial court sentenced him to six months |2imprisonment in Orleans Parish Prison. The trial court suspended the sentence and ordered the defendant to serve one year of active probation.
 

 On February 11, 2008, the defendant Quae Tran was sentenced to serve one year in the custody of the Department of Corrections. The court suspended imposition of the sentence and ordered the defendant to serve one year of active probation.
 
 [1]
 

 On February 20, 2008, the trial court denied the defendant Vu V. Ngo’s motion for post verdict judgment of acquittal. The defendant waived all delays, and the trial court sentenced him to one year imprisonment in the Department of Corrections, suspended the sentence, and ordered the defendant to serve one year of active probation.
 

 Police Officer Charles Love testified that on January 29, 2007, he was dispatched to Real Towing, a towing service located on Chef Menteur Highway in New Orleans, Louisiana, where he was flagged down by the owner. He observed four Vietnamese males. While watching the suspects, he observed a fifth Vietnamese male, David Nguyen, exit the building with what appeared to be stereo amplifiers and place them in the back of an Acura automobile. Officer Love was directed to stand by for backup which he did. Soon, Sergeant Mendoza arrived at the scene. The two officers approached the suspects, and Officer Love observed Nguyen discard an object from his pocket. Sergeant Love retrieved the object, while Sergeant Mendoza and other officers who had arrived handcuffed the suspects. Officer Love identified four photographs he stated depicted the two amplifiers and the Acura automobile.
 

 | -¡Richard Mustacchia testified the he is the owner of Real Towing. On January 29, 2007, he was working late in the yard moving vehicles. At approximately 6:30 p.m. or 7:00 p.m., a small foreign car drove into the yard. A man exited the passenger door and asked Mr. Mustacchia if he had his Honda. Mr. Mustacchia told him that he did not have any Hondas. Mr. Mus-tacchia offered to get the phone number
 
 *167
 
 for the police department’s towing yard, which he believed might be able to locate the vehicle.
 

 Mr. Mustacchia went inside the office to get the phone number, and two men followed him in. He heal’d the door slam again and saw some other people in the office. One man was standing in the doorway urinating out the door. Mr. Mustacc-hia yelled at him to go outside by the fence, whereupon the man left the building and went outside the door. Mr. Mustacc-hia began looking through his rolodex to get the police towing yard phone number.
 

 Mr. Mustacchia then described the situation as it developed:
 

 [ T]he guy was kinda of [sic] telling me, “Y’all, y’all got cash back here? Y’all making money? Y’all making money back here? You got cash?” It just got kinda louder and louder, and when I looked up, I kinda turned again, and when I looked up, the man was kinda turned sideways to me, and he had his hand in his coat, and ... he just started getting louder and louder. “I know you got cash back here.” And when I turned to the other, to look to go to the door, the guy that — I kinda knew what was going on then — to get out the building, there was another one by the water cooler, and he had his hand kinda sideways in his coat. He was kinda standing so I couldn’t come from behind the counter, and ... another one that — I think it was the same guy or another one asked me, “Where’s the cash at,” and I didn’t know what to say, and the only thing I could think of was getting out of my building.
 

 So I told him, I said, “It’s outside in my tow truck.” Well, everybody kind of turned toward the door 14to go out, and I just kinda run my way out the door and went up to the front of the highway.
 

 He testified that he then ran to a nearby business where he summoned the police with a 911 call.
 

 Mr. Mustacchia said that two of the men made gestures indicative of having guns in their coat pockets. He could see that the one who was standing in the front of him had a piece of goldish brown metal in the bottom of his hand, which Mr. Mustacchia believed was a gun. The other men were standing around joking and laughing. Mr. Mustacchia described the office as being a little bigger than the jury box in the courtroom. He stated that because the office was so small everyone in the room knew what was going on.
 

 Mr. Mustacchia stated that he waited approximately ten minutes for the police to arrive. He waited in front while the officers made their way down the driveway. After the suspects were arrested, Mr. Mustacchia was brought into the yard and asked to identify the suspects, who were all lying on the ground. He testified that:
 

 A. [The police] asked me, if this was the guys that did it, and I’m, like, ‘Tes, sir.”
 

 Q. Okay. How exactly, with some more detail, did that take place?
 

 A. [A]t the time it happened, they asked me which one — one of the police officers — I’m not sure which one it is — asked me which ones had the guns, and I told him, I pointed out the one guy that was in front of me that night; and I showed him, I showed him the guy that night that was in front of me, and ... I’m not sure — they were all kinda — they had them all laying on the ground, so I’m not sure which one they actually took the gun off of, but they did find it on one of them. But I showed them the guy I thought that night was in front of me.
 

 
 *168
 
 |fiQ. Okay. Were you able — did you identify the rest as being present in the building?
 

 A. Yes, sii'.
 

 Mr. Mustacchia then identified a picture previously identified for the State by Officer Love, as an amplifier that had been located behind the counter of his business. However, the picture was never formally made part of the record. The picture showed the amplifier on the floorboard of the vehicle used by the defendants.
 

 On cross-examination, when asked if he believed he saw a gun, Mr. Mustacchia said that he knew he saw a gun, but that it turned out to be a lighter. But he then went on to explain that what he thought was a gun turned out to be a lighter.
 

 Officer Love testified that at the time of the incident, Mr. Mustacchia was able to identify all five defendants.
 

 Shortly thereafter, the judge mused aloud:
 

 As to the ultimate question of whether or not the alleged victim made any identification in the presence of this officer, I have to determine if it’s part of the alleged res
 
 gestae
 
 to admit it if it’s otherwise relevant, and it certainly would be relevant as identification evidence.
 

 Subsequently, defense counsel stipulated that the defendants were present at the scene and that they were arrested there.
 

 The judge then read into the record his analysis of the case:
 

 The mere presence of an individual, we know, as the attorneys have referred to this particular point of law this morning, the mere presence of a person in an area where a crime may be occurring is not proof that he or she is in any way involved in that crime and/or legally responsible for it.
 

 liiWhat we have here today is evidence that this court is convinced creates a scene where the presence of five persons in a room with one individual, ah, under the circumstances that the court has heard as the trier of fact, clearly created, ah, an environment of intimidation. Clearly, the gentlemen before this Court were present when at least one man reached into his pocket. The absence of any physical exhibit in this room is not controlling....
 

 What I think this case was all about— and, yes, the gentleman who did plead guilty to first degree robbery. But what I think this case was mainly about was intimidation. The placing of a hand inside of a pocket by one or more persons of the five persons allegedly involved, whether or not there was clearly something that the law would say, ah, constituted an effort on the part of any person to have the gentleman who is said to be the victim reasonably believe that someone or more than one person was armed with a dangerous weapon is really not the issue here for me today.
 

 Ah, the whole environment, as was described, including the giggling, the laughing, the commentary, ah, the subsequent taking or attempted taking of items other than money, ah, the desire of all parties to go out to the truck when the gentleman.... And the fact that all five of them would follow him out and go out into that area where that truck was located ...
 

 The urinating by one of them in the doorway, ah — can you imagine someone doing that in your home, your place of business, and the intimidation factor? And, yes, I presume that the room was 20 by 20. Still very close quarters if you will.
 

 I think there was an attempt that each of these parties participated in to
 
 *169
 
 take from this gentleman something of value, and I think that the intimidation, not the force — I don’t’ consider that — but the intimidation factor has been proven beyond a reasonable doubt. The fact that they did not succeed is of no moment. I find each of the gentlemen guilty of a lesser-included offense of attempted simple robbery. I note the objection to protect the record on behalf of each of the gentlemen. [Emphasis added.]
 

 |7At the time of trial, Mr. Mustacchia could not identify any of the defendants. The parties stipulated that the three defendants were arrested at the towing yard on the night in question. No physical or documentary evidence was introduced at trial.
 

 A review of the record for errors patent reveals none.
 

 Defendants Tran and Ngo assigned as error the insufficiency of the evidence to support their convictions for attempted simple robbery. Defendant Quach set forth three assignments of error, all relating as well to the sufficiency of the evidence. In
 
 State v. Bridgewater,
 
 2000-1529 (La.1/15/02), 823 So.2d 877, the Louisiana Supreme Court discussed the standard of review for claims raising the sufficiency of the evidence as follows:
 

 In reviewing the sufficiency of the evidence to support a conviction, we follow the due process standard of review enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under that standard, “the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.”
 
 State v. Captville,
 
 448 So.2d 676, 678 (La.1984). That standard “preserves the role of the jury as the factfinder in the case but it does not allow jurors ‘to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.’ ”
 
 State v. Pierre,
 
 93-0893 at p. 5 (La.2/3/94), 631 So.2d 427, 429. The jury is not allowed to engage in speculation based merely upon “guilt by association.” 93-0893 at pp. 5-6, 631 So.2d at 429. In order for the trier of fact to convict and for the reviewing court to affirm a conviction, the totality of the evidence must exclude reasonable doubt.
 

 Under
 
 Jackson,
 
 all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.
 
 See State v. Jacobs,
 
 504 So.2d 817, 820 (La.1987). When circumstantial evidence forms the basis of the conviction, the totality of such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. However, “[h]ypotheses of innocence are merely methods for the trier of fact to determine the existence of a reasonable doubt arising from the evidence or lack of evidence.”
 
 State v. Shapiro,
 
 431 So.2d 372, 389 (La.1982) (on reh’g) (Lemmon, J., concurring). This circumstantial | ^evidence rule is not a separate test from the
 
 Jackson
 
 standard; rather, La. R.S. 15:438 merely “provides an evi-dentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found defendant guilty beyond a reasonable doubt.”
 
 State v. Wright,
 
 445 So.2d 1198, 1201 (La.1984). “Although the circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror’s reasonable doubt formula, it emphasizes the need for careful observance of the usual stan
 
 *170
 
 dard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence.”
 
 State v. Chism,
 
 436 So.2d 464, 470 (La.1983).
 

 Id.,
 
 pp 8-9, 823 So.2d at 889.
 

 La. R.S. 14:65(A) defines simple robbery as “the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation, but not armed with a dangerous weapon.” [Emphasis added.] The trial judge in the reasons he read into the record quoted earlier in this opinion, based his decision on a finding of intimidation.
 

 La. R.S. 14:27(A) further provides that to attempt to commit a crime, an accused must do or omit an act tending directly toward the accomplishment of the crime while “having a specific intent” to commit the crime. La. R.S. 14:10(1) defines specific criminal intent as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. In order to prove an attempted simple robbery, the State had to prove that the defendant: (1) had a specific intent to commit the crime of simple robbery, and (2) did an act for the purpose of and tending directly toward the commission of the crime of simple robbery.
 

 Initially, all three defendants argue that their convictions can only be supported under the theory they acted as principals to the crime because there was no testimony implicating either Quae Tran, Jesse Quach, or Vu V. Ngo, as being |flone of the two subjects who placed them hand in them coat pocket in order to reflect the possession of a weapon or a gun. They add that there was no testimony suggesting that any one of them made any of the statements regarding the location of Mr. Mustacchia’s money, or that any one of them crowded Mr. Mustacchia when he sought to come out from the counter, or that any one of them was laughing when he was questioned about the money.
 

 The State argues as it did at trial that the evidence was sufficient to establish their guilt as principals.
 
 [2]
 

 A principal is defined in La. R.S. 14:24 as follows:
 

 All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime, are principals.
 

 Generally, courts reviewing a defendant’s conviction as a principal look to evidence of actions preceding a given offense, during the offense, and after the offense. Often, the State is able to show that a defendant helped plan the offense at issue, or knew of the plan before the offense, and elected to participate.
 
 See, e.g., State v. Peters,
 
 553 So.2d 1026 (La.App. 4 Cir.1989) and
 
 State v. Johnson,
 
 440 So.2d 197 (La.App. 3 Cir.1983).
 

 Although La. R.S. 14:24 provides that all persons “concerned in the commission of a crime” are principals, there are important qualifications, as discussed by the Louisiana Supreme Court in
 
 State v. Pierre,
 
 93-0893 (La.2/3/94) 631 So.2d 427:
 

 Only those persons who knowingly participate in the planning or execution of a crime are principals.
 
 State v. Knowles,
 
 
 *171
 
 392 So.2d 651 (La.1980). Mere presence at the scene is therefore not enough to “concern” an individual in the crime.
 
 State v. Schwander,
 
 345 So.2d 1173 (La.1977). Moreover, “an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state.”
 
 State v. Holmes,
 
 388 So.2d 722, 726 (La.1980).
 

 Id.
 
 p. 4, 631 So.2d at 428.
 

 In
 
 State v. Bridgewater,
 
 the Court also noted as follows:
 

 As a general rule, “liability [as a principal] will not flow merely from a failure to intervene;” however, “silence in the face of a friend’s crime will sometimes suffice when the
 
 immediate proximity
 
 of the bystander is such that he could be expected to voice some opposition or surprise if he were not a party to the crime.” 2 Wayne R. LaFave and Austin W. Scott, Jr., Substantive Criminal Law § 6.7(a) (1986) [Emphasis original.]
 

 Id.,
 
 2000-1529, pp. 11-12, 823 So.2d at 891.
 

 The trial judge made it clear in the reasons he read into the record quoted earlier in this opinion, that he was keenly aware that the mere fact that these defendants may have been present at the scene was not a sufficient basis for implicating them in the crime for which he convicted them — what one might describe as a guilt merely by association. See
 
 Pierre, supra,
 
 93-0893 at p. 6, 631 So.2d at 429. Thus, while the trial judge did not cite to any specific case or cases, he did refer to having researched the legal issues and he specifically articulated his awareness that the “mere presence at the scene” is insufficient to implicate an individual in a crime.
 

 The defendants contend that the State failed to establish that any one of them was in the office at the time the purported attempt to rob Mr. Mustacehia occurred, because he testified that one of the subjects had left the office before the attempted robbery commenced. Accordingly, the defendants argue that the State failed to establish that they acted as principals in the commission of the attempted robbery of Mr. Mustacehia.
 

 11[However, as noted previously, Mr. Mustacehia testified in reference to the five individuals who confronted him when asked whether they all must necessarily have been aware of what was going on:
 

 Oh, everybody. I mean you couldn’t not know what was going on. My counter ain’t that big. I mean, they were all there together.
 

 In this case there is only one out of the five individuals who could arguably be said not to have been in the immediate proximity to the crime — the unidentified individual who urinated in the doorway and then left the room. However, as this act of urination was found beyond a reasonable doubt to be an act of intimidation, the fact that that individual may not have been present in the room throughout the incident does not remove him from participation in the crime.
 

 The State also suggests that the defendants’ guilt can be established because they did not intervene on behalf of the victim, opposite to the actions of David Nguyen, or do anything to alleviate the situation.
 

 As noted in
 
 Bridgewater,
 
 while the demeanor or reaction of a defendant such as the failure to voice some surprise or opposition can lead to the conclusion that he was a party, this conclusion can only be drawn after initially establishing the defendant’s
 
 “immediate proximity
 
 ” to the crime.
 
 Id.,
 
 2000-1529, pp. 11-12, 823 So.2d at 891. Emphasis original. Indeed, in Bridgewater, in which the alleged principal was in another room of the house
 
 *172
 
 when the crime was committed, the evidence was insufficient to establish his guilt.
 

 Bridgewater
 
 does not help the defendants’ cases, because the only individual out of the five persons who confronted Mr. Mustacchia who might have any hope of squeezing himself into the
 
 Bridgewater
 
 facts would be the individual who left the room, i.e., the urinating individual. Unlike the defendant in
 
 Bridgewater,
 
 the 112urinating individual in this case committed his own act of intimidation by the act of urinating in the doorway. Therefore, his guilt is established not by his mere proximity to the crime, but by his active participation in it.
 

 Moreover, the trial judge, in the reasons he read into the record, articulated the manner in which all five of those present at the incident, including the three defendants now before this Court, participated beyond a reasonable doubt in acts of intimidation. Such acts specifically included the act of urination, thereby involving that individual in the crime regardless of which of the five he may have been and regardless of whether he was present throughout the incident. To put it another way, the four who remained in the room at all times were, at the very least, involved directly in acts of intimidation or were in such “immediate proximity” to the crime as to permit the conclusion that, beyond a reasonable doubt, they were principals to the crime. As to individual number five, the individual who committed the act of intimidation by urination, the fact that he may not have been present throughout is immaterial, as the record supports the judge’s finding beyond a reasonable doubt that that individual committed an act of intimidation.
 

 Therefore, as the record supports the trial judge’s finding that, beyond a reasonable doubt, all five individuals in one way or another, participated in intimidating the victim, or at the very least were in such “immediate proximity” to the acts of intimidation as to permit the conclusion that, beyond a reasonable doubt, they were principals to the crime, it is not necessary that Mr. Mustacchia be able at the time of trial to identify which appellant may have committed which act of intimidation. It is sufficient that the record shows that all five committed acts of intimidation in one way or another. Moreover, the record shows that Mr. 113Mustacchia was able to identify the defendants at the time of their arrests at the site of the incident, and they stipulated that they were present and arrested at that time.
 

 For the foregoing reasons, the convictions and sentences of the defendants are affirmed.
 

 CONVICTIONS AND SENTENCES AFFIRMED.
 

 [1]
 

 . The minute entry from Tran's sentencing does not reflect whether the court took any action on his motion for post verdict judgment of acquittal; however, at the subsequent sentencing, the trial court noted that it had previously denied Mr. Tran's motion.
 

 [2]
 

 . It is clear that the State proceeded to trial under the theory that none of the three defendants standing trial put his hand in his pocket, as Officer Love testified at the February 27, 2007 motion hearing that none of the appellants reached into his pocket and asked about the money.