CARTER, C.J.
| ¡.The defendant, Brandon Davis, was charged by bill of information with aggravated battery (count 1), a violation of Louisiana Revised Statutes section 14:34, and armed robbery (count 2), a violation of Louisiana Revised Statutes section 14:64. He pled not guilty to the charges and, following a jury trial, was found guilty on count 1 of the responsive offense of simple battery, a violation of Louisiana Revised Statutes section 14:35; and guilty on count 2 of the responsive offense of simple robbery, a violation of Louisiana Revised Statutes section 14:65. The defendant filed a motion for postverdict judgment of acquittal, which was denied. For the simple battery conviction, the defendant was sen *102 tenced to six months imprisonment. For the simple robbery conviction, the defendant was sentenced to six years imprisonment at hard labor. The sentences were ordered to run concurrently. The defendant now appeals, designating one assignment of error. We affirm the convictions and sentences.
FACTS
On or about the evening of September 8, 2009, the defendant, Joel Barrios, and Timothy Lovelace patronized the Queen Bee Lounge in Raceland, Louisiana. Sandra Thompson, who lived in a trailer behind the lounge with her daughter, Ricki Lin Lewis, was the only employee working at the lounge that night. Lewis had helped at the lounge earlier, but returned to the trailer when Thompson arrived. Randy Reed, who lived in a camper behind the lounge and occasionally helped out, entered the lounge and announced that it was closing time.
According to Thompson, Lovelace approached Reed, informed him that they were not closing, and struck Reed with a pool stick. The defendant then struck Reed with a bar stool. Lovelace jumped over the bar and unsuccessfully tried to open the cash register. Lovelace then began taking bottles of liquor off the shelves |sand placing them on the bar. The defendant, Lovelace, and Barrios took the bottles of liquor out of the lounge and placed them in the defendant’s car. Reed managed to get outside, where the defendant and Lovelace began kicking and beating him. Lewis came out of her mother’s trailer, and tried to intervene. Lovelace struck her, knocking her unconscious. Thompson called 911, then approached the defendant, who was sitting in the driver’s seat of his ear. In response to Thompson’s request that he return the liquor, the defendant stated he could not. Lovelace then approached Thompson from behind and “slung” her, causing her to lose consciousness. Lovelace and the defendant drove away.
Deputy Shawn Gregory, with the St. Charles Parish Sheriffs Office, responded to the dispatch call and stopped the defendant’s car, with Lovelace riding on the hood. The defendant and Lovelace fled and Deputy Gregory was unable to apprehend them. Lafourche Parish law enforcement then took over the case.
The defendant testified that when Reed announced “last call,” Lovelace started beating him with a pool stick, and the defendant ran out the side door of the lounge. The defendant denied hitting Reed with a bar stool. The defendant further denied taking any liquor bottles from the lounge, stating that Thompson lied in testifying that the defendant touched the liquor. According to the defendant, Lovelace placed four or five liquor bottles inside the defendant’s car while the defendant was near the car, then Lovelace went back toward the lounge. The defendant testified that he punched Reed four or five times after Reed put his finger in the defendant’s face and said he knew who the defendant was. After the defendant got in his car, Thompson approached and asked him to return the liquor. The defendant testified he told Thompson, “Ms. Sandy, just back up. I don’t know what he’s going to do.”
| ,¡On cross-examination, the defendant testified Lovelace did not make him drive away from the lounge with the alcohol in his car. Also on cross-examination, the following colloquy took place regarding what the defendant did after driving away from the lounge:
Q. But you didn’t separate yourself from [Lovelace] and go home?
A. No, I didn’t.
Q. Y’all went party some more?
*103 A. Yeah, we did.
Q. After all this, and you knew what had happened and you went partying with him?
A. Yes, sir.
Q. You drove him away from the scene, right?
A. Yes, sir.
Q. With the bottles and instead of going home and doing what you claim you were trying to do, what you actually did is drove around with him and it wasn’t till an hour or so later when the police found you?
The Court: Sir, you have to say yes or no.
[Defendant]: Yes, sir. Yes, sir.
DISCUSSION
In his sole assignment of error, the defendant argues that the evidence was insufficient to support a conviction for simple robbery because the items taken were not in the immediate control of another, nor were the items taken by use of force or intimidation.[1]
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const, amend. XIV, § 1, cl. 3; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La.Code Crim. Proc. Ann. art. 821(B); State v. Ordodi, 2006-0207 (La.11/29/06), 946 So.2d 654, 660. The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, Louisiana Revised Statutes section 15:438 provides that the factfinder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 2001-2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
Simple robbery is defined as “the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon.” La.Rev.Stat. Ann. § 14:65(A). The elements necessary to sustain a conviction of simple robbery are: 1) the taking of anything of value; 2) belonging to another; 3) from the person of another; 4) by use of force or intimidation. State v. Robinson, 97-269 (La.App. 5 Cir. 5/27/98), 713 So.2d 828, 830, writ denied, 98-1770 (La.11/6/98), 727 So .2d 444. The property taken in a robbery must be sufficiently under the victim’s control that, absent violence or. intimidation, the victim could have prevented the taking. State v. Thomas, 447 So.2d 1053, 1055 (La.1984).
Simple robbery is a general intent crime. See State v. Doucet, 93-1523 (La.App. 3 Cir. 5/4/94), 638 So.2d 246, 248-249; La. Rev. Stat Ann. § 14:10(2). An offender has the requisite general intent when “from the circumstances the prohibited result may reasonably be expected to follow from the offender’s voluntary act, irrespective of any subjective desire on his part to have accomplished such result.” State v. Elzie, 343 So.2d 712, 714 (La. 1977).
The defendant contends the evidence showed merely a theft. According to the defendant, there was nothing taken *104 that was in the immediate control of anyone, and no one was threatened “in conjunction” with the taking of the liquor | (¡bottles. In support of his argument that these two elements of the crime of simple robbery were not proven at trial, the defendant asserts there was no testimony that any employee at the lounge “was behind the bar at the time of the theft,” Thompson did not testify that anyone threatened or intimidated her, and no one “used intimidation or force upon [her] to get her to surrender the liquor bottles.” The defendant maintains Thompson “was merely a witness to a theft of liquor from the Queen Bee Lounge.”
Thompson testified that she worked at the Queen Bee Lounge and on the night of the incident, “was more or less managing it.” At the time of the incident, Thompson was the only person working in the lounge. As an employee and acting manager, Thompson was in charge of the lounge, and, as such, the property that was in the lounge, including the liquor, was under her immediate supervision and jurisdiction. See State v. Roberson, 2006-1568 (La.App. 3 Cir. 5/2/07), 956 So.2d 736, 739-740, writ denied, 2007-1243 (La.12/14/07), 970 So.2d 531; State v. Johnson, 97-0317 (La.App. 4 Cir. 8/19/98), 718 So.2d 553, 556.
The defendant argues that no employee was behind the bar at the time the liquor was taken. According to the defendant, “there was no testimony from which one could determine the distance from the liquor bottles to anyone connected with the Queen Bee Lounge at the time of the theft.” However, Thompson’s testimony that she did not see Reed leave the lounge because she “was trying to stop them from getting in the register and taking the alcohol” establishes that she was within close physical proximity of Lovelace and the defendant as they took the liquor. Nonetheless, it is of no moment whether Thompson was standing next to Lovelace and the defendant, or standing at a distance from them while they took the liquor. Property is considered taken from the presence of the victim even if the victim is in one room, while valuables located in another room are removed. State v. Loyd, 1735,637 (La.App. 2 Cir. 2/27/02), 810 So.2d 1214, 1219, writ denied, 2002-1159 (La.4/21/03), 841 So.2d 779 (citing State v. Verret, 174 La. 1059, 142 So. 688 (1932)). See State v. Baldwin, 388 So.2d 664 (La.1980), cert denied, 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981); State v. Long, 36,167 (La.App. 2 Cir. 10/30/02), 830 So.2d 552, 557 (where the money taken in an armed robbery was found to be in the immediate control of the manager (victim) even though she was in the restroom at the time the money was taken from the lounge).[2] Thus, regardless of Thompson’s precise location in the lounge, the liquor was taken from the immediate control of Thompson, the acting manager who witnessed the liquor being taken.
Regarding the “force or intimidation” element of simple robbery, the defendant asserts that no one used force or intimidation on Thompson to make her surrender the liquor bottles. According to the defendant, Thompson did not testify that anyone threatened or intimidated her. However, Thompson testified that she witnessed Lovelace hit Reed with a pool stick and the defendant hit Reed with a bar stool. Thompson testified that the reason she did not stop Lovelace from taking the liquor was because she was scared. Thompson explained, “I was scared of being hurt. I mean, I was by myself and this was two guys that were just wild.”
*105 Outside the lounge, Thompson saw the defendant and Lovelace kicking and beating Reed. When Thompson’s daughter intervened, Lovelace struck her and knocked her out. Thompson testified she did not see her daughter get hit, but found her unconscious. After the liquor was loaded into the defendant’s car, Thompson approached the defendant, who was sitting in the driver’s seat, and asked that he return the liquor. According to Thompson, the defendant told her to |sget out of his car because if she did not, Lovelace would kill her. Lovelace then grabbed her, and slung her to the ground, knocking her out.
The evidence establishes that during a very brief span of time, Thompson witnessed Lovelace and the defendant attack Reed in an unprovoked fashion, take bottles of liquor from the lounge, then continue to beat Reed. Thompson then found her daughter outside, unconscious after being struck by Lovelace. Finally, after Thompson asked the defendant to return the liquor, Lovelace attacked Thompson and knocked her out, as well. The defendant and Lovelace clearly created an atmosphere of fear and intimidation. See State v. Quac Tran, 2008-1103 (La.App. 4 Cir. 8/13/09), 18 So.3d 165, writ denied, 2009-2247 (La.4/16/10), 31 So.3d 1053. Although the defendant did not use actual force on Thompson, we note that resistance by the victim and the use of physical force by the perpetrator are not necessary to complete a simple robbery. State v. Jones, 00-190 (La.App. 5 Cir. 7/25/00), 767 So.2d 808, 810, writs denied, 2000-2449, 2000-2493 (La.6/22/01), 794 So.2d 782, 783. See Robinson, 713 So.2d at 830-831 (where the intimidation element of simple robbery was proved based on the victim’s being intimidated by the defendant’s demeanor and use of slang, despite the absence of any evidence that the defendant used any threatening words or gestures). See State v. Johnson, 10-611 (La.App. 5 Cir. 1/25/11), 60 So.3d 43; State v. McCall, 577 So.2d 764 (La.App. 2nd Cir.1991), writ denied, 582 So.2d 1304 (La.1991).
The parties to crimes are classified as principals and accessories after the fact. La.Rev.Stat. Ann. § 14:23. Principals are all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime. La.Rev.Stat. Ann. § [914:24. See State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427, 428 (per curiam). Thus, the State may prove a defendant guilty by showing that he served as a principal to the crime by aiding and abetting another. State v. Arnold, 2007-0362 (La.App. 1 Cir. 9/19/07), 970 So.2d 1067, 1072, writ denied, 2007-2088 (La.3/7/08), 977 So.2d 904. A general principle of accessorial liability is that when two or more persons embark on a concerted course of action, each person becomes responsible for not only his own acts but also for the acts of the other. State v. Smith, 2007-2028 (La.10/20/09), 23 So.3d 291, 296 (per curiam).
While the defendant did not personally strike Thompson or her daughter, he struck Reed several times. Thompson witnessed the attack on Reed and was intimidated by the “wild” behavior. The defendant insisted at trial that he did not carry any liquor bottles from the lounge to his car. But even assuming such testimony is true, the defendant clearly took the liquor when he drove away with it in his car.
The defendant asserts there was no threat or intimidation “in conjunction” with the taking of the liquor bottles. The defendant’s assertion regarding the requirement of a temporal sequence is er *106 roneous. The use of force or intimidation does not have to occur before, or contemporaneous with, the taking. The force or intimidation element of robbery is satisfied by evidence that force or intimidation directly related to the taking occurred in the course of completing the crime. State v. Meyers, 620 So.2d 1160, 1162-1168 (La.1998). Thus, a rational juror could have concluded that the intimidation of Thompson, whether inside or outside the lounge, occurred in the course of the defendant’s commission of a robbery. See Meyers, 620 So.2d at 1163.
When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant’s own testimony, | inthat hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 82-2206 (La.2/27/84), 448 So.2d 676, 680. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact’s determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder’s determination of guilt. State v. Taylor, 97-2261 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a “thirteenth juror” in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La.App. 1st Cir.1985). In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins, 2003-1980 (La.4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).
The jury heard all of the testimony and viewed all of the physical evidence presented to it at trial and, notwithstanding any conflicting testimony, found the defendant guilty. The jury’s verdict reflected the reasonable conclusion that based on the physical evidence and testimony, the defendant, by use of intimidation, took bottles of liquor from Thompson without her consent. In finding the defendant guilty, the jury clearly rejected the defendant’s theory of innocence. See Captville, 448 So.2d at 680.
^CONCLUSION
After a thorough review of the record, we find the evidence supports the jury’s verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of the defendant’s hypothesis of innocence, that the defendant was guilty of simple robbery. See State v. Calloway, 2007-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam).
CONVICTIONS AND SENTENCES AFFIRMED.

. The defendant does not contest the conviction for simple battery.

. Simple robbery is identical to armed robbery except that the perpetrator is "not armed with a dangerous weapon.” See La.Rev.Stat. Ann. § 14:64(A) & § 14:65(A).